# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BARBARA CLIFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-0505 |
| ) | JUDGE HAYNES |
| ) | |
| THE SURGICAL CLINIC, PLLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff, Barbara Cliff, filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA") against the Defendant, The Surgical Clinic, PLLC. Plaintiff asserts that the Defendant discriminated against her on the basis of her disability. The Defendant filed an answer denying Plaintiff's allegations.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 20), contending that Plaintiff neither has a disability nor was perceived as having a disability and Plaintiff did not request an accommodation for her alleged disability. In response (Docket Entry No. 23), Plaintiff asserts, in sum, that her proof establishes that she is disabled and that she requested and was denied a reasonable accommodation.

For the reasons set forth below, based upon the undisputed facts, the Court concludes that Plaintiff has failed to show that she is disabled. Thus, the Defendant's motion for summary judgment should be granted.

# I. FINDINGS OF FACT[1]

The Defendant hired Plaintiff on December 11, 2006 and terminated her on September 9, 2007. (Docket Entry No. 25, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 1). Plaintiff worked in Defendant's billing and collection department as an Insurance Reimbursement Specialist. (Docket Entry No. 6, Answer at ¶ 5). Soon after starting work, Plaintiff requested to work from home. (Docket Entry No. 20, Plaintiff Deposition at p. 163). Plaintiff did not give Defendant's representative a reason as to why she wanted to work from home. Id. Plaintiff also requested an alternative work schedule to work four, nine-hour days and one four-hour day per week. Id. at p. 94. Plaintiff's request was granted for two or three weeks, but after two employees left Defendant directed Plaintiff to return to her regular schedule. Id.

Prior to working for Defendant, Plaintiff was diagnosed as having Meniere's disease. (Docket Entry No. 25, at ¶ 2). Plaintiff's symptoms included vertigo, dizziness, vomiting, and tinnitus that are episodic by nature. Id. at ¶¶ 3-4. According to Plaintiff, her condition slowed down her responses and made it more difficult for her to complete tasks effectively. Id. at ¶ 10. Plaintiff had a shunt surgically placed in her inner ear in 2002. Id. at ¶ 5. Before placement of the initial shunt, Plaintiff would have a "full attack" approximately once a month. (Docket Entry No. 20, Plaintiff Deposition at p. 76). On July 20, 2007, Plaintiff had a replacement shunt surgically placed

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

in her inner ear. (Docket Entry No. 25, at ¶ 6). Plaintiff has not had a "full attack" of Meniere's disease since her surgeries. Id. at ¶ 7. Plaintiff testified that with medication and the shunt, her condition is controlled and she is "able to function." Id. at ¶ 8; Plaintiff Deposition at p. 77).

Yet, Plaintiff cited stress as triggering episodes of vertigo and described her job as stressful. (Docket Entry No. 20, Plaintiff Deposition at p. 140). Plaintiff described stress as due to heavy workload and "combative stress." Id. at p. 52. Plaintiff defined "combative stress" as "that you can be sitting doing your job or whatever, and you have basically an agenda for yourself that you made for the day. And there is repetitive interruptions, and you never are able to complete that task." Id. at p. 52. To reduce her stress, Plaintiff asserts that she suggested that Defendant's managers to alter Defendant's management practices, including a new system to combine its reports. Id. at pp. 140-41.

Yet, Plaintiff did not tell Dana Curtis, her supervisor, that she was "having issues" and needed "to find some alternative way to get her work done." (Docket Entry No. 20, Plaintiff Deposition at p. 139). Plaintiff stated:

> Q: Did you ever go to Dana Curtis and say, Dana, I am having these issues. I need to find some alternative way to get my work done?
>
> A: No.
>
> Q: Anything like that that you mentioned to Dana Curtis?
>
> A: No.
>
> Q: Why not?
>
> A: Because, I guess, you know, that did come up in my mind but it was like, what would I do? What would I ask her? Sometimes you have to know what to ask before you ask it.

3

> Q: Okay. Well if —
>
> A: Because the work — I mean, everybody had their own workload. I didn't know what and I hadn't discussed it with my doctor as to what I could ask them to help me with to accommodate any accommodations or whatever. I didn't really pick that up until I looked on this -- on the other sheets and read on there their responses to the questions that the Hartford asked them. And I didn't even think about that until I read that.

Id. at pp. 139-40.

Defendant terminated Plaintiff for her difficulty in completing assignments correctly and timely. (Docket Entry No. 23, Dana Curtis Deposition at pp. 15-22). Plaintiff stated that no one told her that she was being terminated because of her Meniere's disease. Id. at p. 158.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

4

otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

. . . .

Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:
In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

7

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement

8

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

9

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was either denied a reasonable accommodation for her disability or she suffered an adverse employment action solely because of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996); Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). A plaintiff may prove that he was discriminated against based upon his disability either through direct or indirect evidence. Id.

The Sixth Circuit has stated that if a plaintiff presents direct evidence of disability discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (quoting Monette, 90 F.3d at 1186).

However, where a plaintiff seeks to establish discrimination through indirect evidence courts employ the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting approach so that the

> plaintiff may establish a prima facie case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

Hedrick, 355 F.3d at 453 (quoting Monette, at 1186-87); Torok v. Gibralter Veterinary Hosp., Inc., 442 F. Supp.2d 438, 457 (E.D. Mich. 2006) ("Whether Plaintiff proceeds under the 'direct evidence' or the McDonnell Douglas burden-shifting mode of analysis, she cannot succeed on an ADA claim of disability discrimination absent a showing that she is 'disabled' within the meaning of the statute.").

An individual is disabled under the ADA if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). A major life activity is substantially limited if the employee is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. at § 1630.2(j)(i), (ii). In the context of working, a plaintiff would be required to show an inability to work in a broad class of jobs, not just "one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 492 (1999); 29 C.F.R. § 1630.2(j)(3)(I).

In Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), the Supreme Court directed that for purposes of qualification under the ADA's definition of disabled, the terms "substantially" and "major" must be "interpreted strictly."[2] The Court stated that "Merely having an impairment does not make one disabled for purposes of the ADA." Id. at 195. For an impairment to be a substantial limitation of a major life activity, the impairment must "prevent[] or severely restrict[] [an] individual from doing activities that are of central importance to most people's daily lives." Id. at 198. Further, "[t]he impairment's impact must also be permanent or long term." Id. Thus, "any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the [ADA]." Mahon v. Crowell, 295 F.3d 585, 590-91 (6th Cir. 2002).

---

[2]The Court notes that the "ADA Amendments Act of 2008" ("ADAAA"), that became effective January 1, 2009, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008), "does not apply retroactively to govern conduct occurring before the Act became effective." Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009). Thus, because the alleged conduct occurred before the ADAAA became effective the Court is to apply the ADA law that was in effect at the time of the alleged conduct.

Under the ADA, the disability issue must be determined on a case-by-case basis. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 567 (1999) (for an ADA claim, the ADA plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial"). Moreover, "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." Sutton, 527 U.S. at 475.

Plaintiff contends that she can establish discrimination with both direct and indirect evidence. Plaintiff cites as direct evidence Plaintiff's deposition testimony that Curtis told Plaintiff that she did not believe that when Plaintiff returned to work from her leave that Plaintiff would be able to function in her job or perform her duties as she did before she left. Plaintiff argues that "The question is 'Could a reasonable jury infer from this statement that Mrs. Cliff was perceived as disabled?' The answer is most likely, yes." (Docket Entry No. 23 at 10 citing Plaintiff's deposition testimony at p. 146).

As an initial matter, the cited portion of Plaintiff's deposition testimony was not filed with the Court. Further, the Sixth Circuit has defined direct evidence as "if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination." Kleiber v. Honda of America Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007); see also Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003) (race-discrimination case; noting that direct evidence does not require the fact-finder to draw any inferences to conclude that the defendant discriminated against the plaintiff). Plaintiff admits that the alleged statement would require and inference by the jury. Accordingly, the Court concludes that this alleged statement by Curtis does not constitute direct evidence of discrimination.

## A. ACTUAL DISABILITY

Defendant does not dispute for purposes of its motion that Plaintiff can meet her burden that she possesses a physical or mental impairment, but contends that Plaintiff cannot establish her impairment "substantially limits one or more of her major life activities."

In Sutton, the Supreme Court stated, "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." 527 U.S. at 482-83. Here, the evidence reveals that Plaintiff has not had a "full attack" of Meniere's Disease since having a shunt surgically implanted in her ear. Plaintiff also admits that she is "able to function" with medication in conjunction with the shunt. Plaintiff does not deny that she was unable to perform the essential functions of her job, but that "she functions best outside an office environment." (Docket Entry No. 25, at ¶ 7). In considering the ameliorative effects on Plaintiff's impairment, the Court concludes that Plaintiff fails to establish that she is substantially limited in any major life activity.

To have a "record of such impairment," a plaintiff must prove she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. 1630.2(k). Thus, claims under this theory "would appear to succeed or fail for many of the same reasons as claims under § 12102(2)(A) (based upon an actual impairment), because both require a predicate showing of a mental or physical impairment that substantially limits one or more major life activities." Edwards v. Ford Motor Co., 218 F. Supp.2d 846, 851 (W.D. Ky. 2002); see Sebest v. Campbell City School Dist. Bd. of Educ., 94 Fed. Appx.

320, 326 (6th Cir. 2004) (In rejecting Plaintiff's argument that he had a record of a disability the Sixth Circuit stated, "[Plaintiff] has not provided evidence that the leukemia from which he suffered in the 1980s substantially limited a major life activity. Declaring leukemia a disability per se would contravene this court's 'statutory obligation to determine the existence of disabilities on a case-by-case basis.'") (citation omitted).

Plaintiff has not presented any medical records in support of her "record of" claim nor any work restrictions. For the reasons stated previously, the Court concludes that Plaintiff has failed to present evidence that she had a "record of" disability.

## B. REGARDED AS DISABLED

The chief aim of the ADA's "regarded-as-disabled" provision is to "'stamp out the stereotyping of and discrimination against persons with disabilities in all their forms.'" Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1106 (6th Cir. 2008) (quoting Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir.2001)). In Ross, the Sixth Circuit stated, "[A]n individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." 237 F.3d at 706. Thus, "[u]nder the 'regarded as' prong of the ADA, membership in the protected class becomes a question of intent." Id.

In analyzing the regarded-as prong of the ADA, the Supreme Court has provided the following guidance:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity

entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489. In the Sixth Circuit,

Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs.

Ross, 237 F.3d at 709.

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton, 527 U.S. at 491. In the context of work:

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

Plaintiff fails to present any evidence that she was regarded or perceived as having a disability. Plaintiff argues that Curtis knew Plaintiff had Meniere's disease prior to Plaintiff being hired by Defendant and that Plaintiff had filed for short term disability regarding this condition. Plaintiff has not submitted any deposition testimony or relevant documents in support of her contention. Further, Curtis testified that she was unaware that Plaintiff had Meniere's disease prior to her hiring. (Docket Entry No. 23, Curtis Deposition at pp. 9-10). Plaintiff's allegation that Curtis stated that she did not believe that Plaintiff when Plaintiff returned Plaintiff would be able to

function in her job and to perform her duties as she did before she left is unsupported. Moreover, Plaintiff has not presented any testimony of any supervisors or co-workers as to their knowledge or perceptions of the effect that Plaintiff's condition had on her work. Further still, Plaintiff admits that she is able to do her job but that "she functions best outside an office environment." (Docket Entry No. 25, at ¶ 7).

Accordingly, the Court concludes that Plaintiff has failed to present evidence that she was regarded as disabled.

### C. REQUEST FOR AN ACCOMMODATION

"[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable." Monette, 90 F.3d at 1183 (emphasis in original). "Part of this burden is that a plaintiff show that he requested the specific accommodation; a plaintiff may not rely on accommodations that he did not request." Manigan v. Southwest Ohio Regional Transit Authority, 385 Fed. Appx. 472, 478 n.5 (6th Cir. 2010).

Plaintiff testified that she did not ask Curtis for an alternative way to get her work done. However, Plaintiff denies this fact and cites her affidavit in support. See (Docket Entry No. 25, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 11). "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." Hall v. Wal-Mart Stores East, LP, 637 F. Supp. 2d 558, 591 n.2 (M.D. Tenn. 2009) (quoting Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986)). Accordingly, the Court does not consider the cited portion of Plaintiff's affidavit.

Because Plaintiff fails to present evidence that she requested a reasonable accommodation related to her Meniere's Disease, the Court concludes that Plaintiff's claim is without merit.

## III. CONCLUSION

Accordingly, for these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 20) should be granted in part and denied in part.

An appropriate Order is filed herewith.

**ENTERED** this the ___16th___ day of December, 2010.

                                          WILLIAM J. HAYNES, JR.
                                          United States District Judge